FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2013 OCT 11  P 1:42

CLERK'S OFFICE
AT GREENBELT

BY_____ DEPUTY

JFM 13 CV 3021

**CIRCUIT COURT OF MARYLAND FOR PRINCE GEORGE'S COUNTY**

TAO ENIOLA
    and
VANILDA ENIOLA
9404 Van Buren Street
Lanham, MD. 20706

        Plaintiffs

v.

CASE NO. CAL13-27075

PNC FINANCIAL SERVICES GROUP, INC.
249 Fifth Avenue
Pittsburgh, PA. 15222

        Defendant

Serve: **Resident Agent**
    CSC-Lawyers Incorporating Service Co.
    7 St. Paul Street
    Suite 1660
    Baltimore, MD. 21202

## COMPLAINT

( Violation of Maryland Unfair Trade practices, Maryland Consumer Protection Law, Violation of Federal Fair Housing Act., Violation of Truth-In Lending Act., Violation of Code of Federal Regulation 24, Section 3500., and Breach of Common Law Duties).

    Comes now the Plaintiffs, Tao Eniola and Vanilda Eniola ( husband and wife) and sues the Defendant, PNC Financial Services Group, Inc., and alleges:

### Nature of the Case

    1.   This is an action by a State of Maryland Consumers against PNC Financial Services Group, Inc., a marketer of Mortgage Lending Scheme, and a corporation which engage in the Unfair Trade Practices resulting in an unlawful denial of mortgage loans. Said unfair trade practices are targeted to wards individual consumers particularly Tao Eniola and his wife Vanilda Eniola. The defendant practices is both unconscionable substantive and procedural terms which constitute violations of several provisions of Title 13, §13-301 of the Annotated Codes of

Maryland, Consumer Protection Act, Violation of Federal Laws to include but not limited to Fair Housing Act, Truth-In- Lending Act, U.S.C. 15, §1691., CFR 24, §3500 and Maryland Common Law Duties. Thus, plaintiffs has been injured as a result of the defendant, PNC Financial Services Group, Inc.'s actions and thus the plaintiffs are entitle to statutory and/or treble damages, plus compensatory and punitive damages along with other appropriate relief as this court deems appropriate.

## Jurisdiction

2. Jurisdiction is vested in this Court founded on diversity and amount.

## Personal Jurisdiction over the Defendant

3. This court has personal jurisdiction over the defendant, PNC Financial Services Group, Inc. Because the defendant has one or more of the following actions, anyone of which would submit the defendant to the lawful exercise of personal jurisdiction in the state of Maryland, pursuant to the Annotated Code of Maryland and Maryland Rules:

   (a) Transact any business in the state of Maryland
   (b) Causes tortuous injury in the state of Maryland by an act or omission.
   (c) Causes tortuous injury in the state by an act or omission outside the state of Maryland where the defendant regularly does or solicits business, engages in any other persistent cause of conduct, or derives substantial revenue from goods used or consume or services rendered in the state of Maryland., and
   (d) Has an interest in the real property in the state and/or contracts to supply services in the state of Maryland.

4. For example only, the defendant, PNC Financial Services Group, Inc. (Hereinafter the "PNC") caused tortuous activity in the state of Maryland by having the plaintiffs submit a mortgage loan application, submitted all documents requested but not required in support of said application and thereafter denied the plaintiffs the loan without a basis. On information and belief, PNC is registered to do business in the state of Maryland and derive substantial revenues from the state.

5. In addition, because PNC's activities would lead it to reasonably expect it to be haled into a Maryland court, such exercise of In personam jurisdiction is in keeping with the Due Process of the United States Constitution.

### Parties

6. Plaintiffs, Tao Eniola and Vanilda Eniola are husband and wife and are resident of the state of Maryland.

7. Defendant, PNC Financial Services Group, Inc., is a corporation of the Commonwealth of Pennsylvania with its principal office at 249 Fifth Avenue, Pittsburgh, Pennsylvania 15222.

### Facts

8. On or about July 7, 2013, the defendant, PNC was contacted through the branch office of its subsidiary PNC Bank located in Greenbelt, Maryland where plaintiffs has done business with defendant for more than 30 years and for a mortgage loan. The branch manager at said location referred plaintiffs to the loan officer named Fatoumata Kaba at PNC Mortgage a division of PNC Financial Services Group, Inc.

9. Fatoumata Kaba represented herself as an employee of the defendant, PNC

10. On or about July 9, 2013 Fatoumata Kaba e-mailed to the plaintiffs comparisons of two (2) different loan options to choose from. Said options detailed closing/settlement cost to the plaintiffs, and both comparisons assumed a 3 % ($1,200) down payment on a $42,000.00 property plaintiffs had won by a bid on a Department of Housing and Urban Development sales.

11. Plaintiffs decided on a conventional mortgage and expressed a 10 % ($4,200.00 ) down payment and a loan of $37,800.00

12. On or about July 11, 2013 ,plaintiffs requested and received a loan application from the defendant, and the completed application was returned to the loan officer, Fatoumata Kaba.

13. On or about July 18, 2013., and after talking to Fatoumata Kaba by phone and answered / or addressing all her concern Fatoumata Kaba appeared to be satisfied and had no problem with the loan application and stated that plaintiffs credit records were excellent with average score of 800.

14. The defendant, PNC. Knew, had reason to know as part of the telephone conversation on or about July 17, 2013 that:

    (a) Plaintiffs present home (9404 Van Buren Street, Lanham, MD 20706 ) was fully paid for

    (b) Defendant was told of plaintiffs choice of 10 % ($4,200.00 ) down payment and for a loan of $37,800.00

    (c) Defendant knew of the earnest deposit money 0f $500.00 with Housing and

Urban Development (hereinafter "HUD")

(d) Defendant knew that the plaintiffs were debt free as a result of the credit report ordered by the defendant.

(e) Defendant knew of the plaintiffs 2 separate investment accounts with sufficient funds for settlement /loan closing because they were listed in the loan application submitted to the defendant.

15. That on or about July 18, 2013 plaintiffs suggested to the defendant, PNC by e-mail that their God daughter may rent their present home after the closing /settlement of the property for which the loan application is pending (10125 Prince Place, Upper Marlboro, MD.).

16. That after the above suggestion, defendant, PNC demanded and received a lease agreement together with a copy of a security deposit check for $2,500.00. The lease agreement's condition was that the loan has to be approved and settlement took place. Defendant knew of the condition because they requested and received a copy of the lease agreement.

17. Defendant, PNC knew, had reason to know and should have known that the security deposit submitted to plaintiffs as suggested by the plaintiffs were *not* intended to be used as part of the funds for closing /settlement. In addition, there were sufficient funds in plaintiffs' account for closing as per "Good Faith Estimate" submitted to plaintiffs on or about August 9, 2013.

18. That the Good Faith Estimate submitted to plaintiffs by law should have been submitted within three (3) days after the loan application was made.

19. Defendant, PNC was *not* ever suggested to plaintiffs that their God daughter rent their present residence (9404 Van Buren Street ) and her security deposit was *not* ever suggested as a part of funds to be used for closing / settlement. In addition, defendant had no knowledge that the plaintiffs has a God daughter.

20. On or about August 15, 2013, and after all efforts to deny the loan failed, defendant, PNC decided without notice to plaintiffs to increase the down payment from its original demand of 3 % ($1,200.00) to $10,000.00 or more than 23.8 % of $42,000.00 and also demanding that the security deposit made to plaintiffs by their God daughter be deposited to an account by a time certain 4 p.m. August 19, 2013.

21. Defendant, PNC knew, had reason to know that there was sufficient funds in the plaintiffs account to close the loan without said security deposit by the Good Faith Estimate submitted to the plaintiffs. Also defendant could have request an additional money deposit if

need be from any other source that the plaintiffs had.

22. That on or about August 20, 2013 and nine (9) days before the schedule settlement date on the property the officers of the defendant were forewarned and requested to correct the mistake been made by their employees before the plaintiffs suffered damages.

23. The plaintiffs, Tao Eniola and Vanilda Eniola's average credit score is 800 and debt free. Defendant knew that the reason for the mortgage loan request was plaintiffs intentions to down size, and was communicated to the defendant.

24. Defendant, PNC knew that plaintiffs present home (9404 Van Buren Street, Lanham, MD.) was going to be listed for sale thereafter the closing /settlement on the property for which loan is requested (10125 Prince Place, Upper Marlboro, MD.); and that the purpose of the lease agreement was to have income while the property is listed for sale.

25. That on or about August 27, 2013 and plaintiffs not having heard from the defendant (2 days before the schedule settlement) as to whether or not the loan will be approved so that plaintiff may decide as to whether or not to request additional time with HUD settlement attorneys, plaintiffs e-mailed the loan officer for a decision. The answer to said request came from a Brian D. Glou, vice president, mortgage marketing manager, and stating the reason for denial of the loan "your loan is no longer in process, as Fatou had explained, we needed to show proof that the check for the first month rent and the security deposit for your current residence had been deposited."

26. Defendant, PNC had sent a letter dated August 23, 2013 ( not received until September 3, 2013 by plaintiffs ) denying the loan stating a totally different reason "Unable to verify residence, lack of cash reserves", and "we do not grant credit to any applicant on the terms and conditions you have requested".

27. Defendant, PNC did not set any pre condition or supply any information as to requirement for mortgage loan to be approved, and for oral information requested they were supplied fully to the defendant.

### COUNT 1 - Negligence

28. Plaintiffs hereby adopts and incorporates the allegations contained in paragraph 1 through 27 above as if fully alleged herein.

29. To prevail on a claim of negligence under Maryland Rules and / or law, the plaintiffs must establish that the defendant owed them a duty of care and that the defendant breached that

duty, and the plaintiffs as a result sustained harm and damages due to said breach.

30. In this action, the defendant, PNC had a duty to the plaintiffs, Tao Eniola and Vanilda Eniola at least by performing its duty in a manner that did not violate the law. The defendant failed to provide any information / pre condition as to the steps needed to be taken / necessary for a successful mortgage loan approval.

31. The defendant, PNC knew, had reason to know that the mortgage loan requested are individual, personal and consumer loan and that Tao Eniola and Vanilda Eniola are the target of the defendant's evil intent.

32. Plaintiffs exercised due care and were not contributory negligent at any time pertinent to this action.

33. Plaintiffs loss of the property successfully bid with the HUD was the result of the defendant negligence and incompetence

34. The defendant, PNC negligent actions were the direct and the approximate cause of the plaintiffs' damages.

WHEREFORE, plaintiffs, Tao Eniola and Vanilda Eniola prays this court award them compensatory and punitive damages against the defendant, PNC jointly and severally, plus costs and other relief this court deems appropriate.

## COUNT 11

### Violation of the Maryland Consumer Protection Law / Unfair Trade Practices Annotated

35. Plaintiffs hereby adopts and incorporated the allegations contained in paragraph 1 through 34 above as if fully alleged herein.

36. The Annotated Codes of Maryland Title 13, etc. makes it unlawful and unfair methods of competition and unfair or deceptive acts or practices

37. Plaintiffs, Tao Eniola and his wife, Vanilda Eniola are individual consumers that personally targeted by the defendant, PNC for mortgage loan credit denial with malice.

38. The plaintiffs were personally denied credit for reason unrelated to their ability to repay the mortgage loan that would have been guaranteed / secured by the real property (10125 Prince Place, Upper Marlboro, MD. )

39. The defendant, PNC violated the above referenced laws in numerous ways including but not limited to: (a)  Unfair or deceptive trade practices, and (b)  Designed a reason totally unrelated to the ability to repay the loan.

40. Defendant's usage of plaintiffs suggestion to have their God daughter rent their present home as a basis for denying plaintiffs loan application is unlawful.

41. Defendant, PNC violations of the laws of Maryland were wanton, forethought and with reckless disregard for the plaintiffs rights.

42. As a result of the defendant violations of the laws of Maryland, defendant proximately caused plaintiffs, Tao Eniola and Vanilda Eniola damages and are entitled to statutory and punitive damages.

WHEREFORE, plaintiffs, Tao Eniola and vanilda Eniola prays this court award them compensatory and punitive damages against the defendant, PNC jointly ana severally, plus costs and other relief this court deems appropriate.

## COUNT 111

### Violations of the Pennsylvania Unfair Competition and Deceptive Trade Practices 73 P.S.§§ 201

43. Plaintiffs hereby adopts and incorporates the allegations contained in paragraph 1 through 42 above as if fully alleged herein.

44. Pennsylvania unfair Trade practices and Consumer Protection Law 73 P.S. Section 201 makes it unlawful unfair competition and deceptive trade acts or practices.

45. Defendant, PNC violated 73.P.S. Section 201 in numerous ways, including but not limited to:

    (a) Causing likelihood of confusion or of misunderstanding

    (b) Using deceptive representations to causing the likelihood of confusion or misunderstanding.

46. Defendant, PNC's violations of 73 P.S. were wanton, willful and with carelessness

47. Due to defendant's violations, plaintiffs were subjected to grievous humiliation, embarrassment and public shame, and intimidation together with emotional distress.

48. Plaintiffs, Tao Eniola and Vanilda Eniola are entitle to statutory and /or treble and /or compensatory and punitive damages

**WHEREFORE**, the plaintiffs, Tao Eniola and Vanilda Eniola prays this court award them compensatory and punitive damages against the defendant, PNC jointly and severally, plus costs and other relief this court deems appropriate.

## COUNT 1V - Unconscionability

49. Plaintiffs hereby adopts and incorporates paragraphs 1 though 48 above as if fully alleged herein.

50. Under Maryland, Pennsylvania and Federal Consumer Protection Laws, a contract from the defendant would have been unconscionable if there is an absence of meaningful choice on the part of the parties together with a contract terms which would have been unreasonably favorable to another party.

51. Defendant, PNC held itself out to the general public and to the plaintiffs, Tao Eniola and Vanilda Eniola as a consumer mortgage lender, also as an expert in the field of mortgage banking.

52. Plaintiff, Tao Eniola met with Fatoumata Kaba, defendant, PNC's representative with reasonable expectation and belief, and as a customer of the defendant for more than thirty (30) years, and that the defendant would process the mortgage loan application with due diligence and would conform to the verbal representation made and as promised to plaintiff since the bank was an expert in mortgage lending.

53. In submitting the bank loan application, the defendant knew, had reason to know and should have known as a mortgage banker that its terms were not favorable to the plaintiffs herein.

54. The defendant, PNC had a duty to the plaintiffs as consumers to perform their obligations by supplying necessary loan pre-qualification information to the plaintiffs so that the plaintiffs will know what is expected of them. For example, PNC had a duty as a banker with decades of experience in mortgage lending to perform said transaction in a manner that did not violate the law.

55. The defendant, PNC breached this duty by engaging in the deceptive and unlawful practices described above.

56. The defendant, PNC's activities were reckless disregard of their duties to the plaintiffs, Tao Eniola and Vanilda Eniola and as a result proximately caused damages to plaintiffs.

**WHEREFORE**, plaintiffs, Tao Eniola and Vanilda Eniola prays this court award them compensatory and punitive damages against the defendant, PNC, plus costs and other relief this court deem appropriate.

## COUNT V - Conspiracies to Defraud

57. Plaintiffs hereby adopts and incorporates the allegations contained in paragraph 1 through

56 above as if fully alleged herein.

58. On or about July 18, 2013., plaintiffs suggested to the defendant by e-mail that after talking to their " God daughter, also an attorney, she may be interested in the renting of their present resident up and until sold if it will help in the financing for the property. Just a thought, should you need a letter to that end, please advise."

59. The loan officer ( an employee of the defendant ) became so obsessed with the suggestion that she (Fatoumata Kaba) demanded and received a lease agreement and a copy of the security deposit check.

60. Defendant knew, had reason to know that by the language of the lease agreement that plaintiffs God daughter expected to occupy the property to be rented on the condition that the loan was approved and her God parent move to the new property. Our God daughter went to the extend of asking the basis of the loan officer demand for security deposit.

61. Defendant, PNC's employee on or about August 9, 2013 in appropriately used item 58 above as the basis for the mortgage loan denial by stating:

" we still need to see the $2500 rent check being deposited into whichever account"

" to verify that the borrower has enough funds to close"

The fact is there were enough funds in the plaintiffs account to close at the time the above were written by another employee of the defendant, Andrew J. Baker, a document procurement specialist for PNC.

62. The defendant's employees were so obsessed with the rental security deposit that they in appropriately cancelled the processing and used the rental security deposit as an excuse for the denial of the loan application. The defendant employee, Andrew J. Baker states in an e-mail dated August 19, 2013, to another employee, Fatoumata Kaba that :

" Please be advised that the file will be cancelled at 4pm

today if we do not receive proper documentation"

63. In addition, another employee of the defendant, Brian D. Glou, assistant vice president, and mortgage marketing manager, wrote to plaintiffs in an e-mail dated August 27, 2013 and giving the reason the loan is denied as follows:

" Your loan is no longer in process. As Fatou had explained, we needed to show that the check for the first months rent and the security deposit for your current residence had been cashed." "therefore your loan was cancelled for incomplete documentation. This was a condition of the loan approval and without it PNC

was not able to continue the process."

64. The defendant other reason for the loan denial seems to contradict Brian D. Glou's explanation received September 4, 2013 and dated August 23, 2013., and states the reason for loan denial as:

> "Unable to verify residence, Lack of cash reserve and we do not grant credit to any applicant on the terms and conditions you have requested"

65. That upon request from the defendant's employees, plaintiffs submitted to the defendant a copy of a property tax bill paid for 2013 on or about August 10, 2013. The plaintiffs purchased the property in January 1990 and was paid off in September 2004. In addition, plaintiffs has lived at the property (9404 Van Buren Street) for more that 23 years. As stated earlier in this complaint, plaintiffs had sufficient funds in their account with the bank based on the Good Faith Estimate submitted by defendant to the plaintiffs.

66. The conspiracy by the defendant includes but not limited to compelling plaintiffs to deposit money that was not intended for closing/settlement of the mortgage loan requested by the plaintiff; that the defendant had requested and received copy of paid property tax bill for their present residence; and that defendant demands would have provided no value to plaintiffs because of the misrepresentation by the defendant

67. Plaintiffs, Tao Eniola and Vanilda Eniola have been damaged as a result of the defendant, PNC's conspiracies to defraud.

68. The actions of the defendant in committing the above conspiracies to defraud were intentional, willful and with careless disregard for the truth and the plaintiffs' rights.

**WHEREFORE**, plaintiffs, Tao Eniola and Vanilda Eniola prays this court award them compensatory and punitive damages against the defendant, PNC jointly and severally, plus costs and other relief this court deems appropriate.

## COUNT VI - Aiding and Abetting

69. Plaintiffs hereby adopts and incorporates the allegations contained in paragraph 1 through 68 above as if fully alleged herein.

70. The defendant, PNC knowingly associated / employed Fatoumata Kaba, Loan Officer, Andrew J. Baker, Mortgage Procurement Specialist, and Brian D. Glou, Assistant vice President, and Mortgage Marketing Manager and by appointment as agent of the defendant in the commission of the unlawful act; because the defendant knew, had reason to know or should have

known and believed that these employees actions is intended to succeed.

71. The defendant, PNC employees knowingly associated with each other and in concert participated in the fraudulent mortgage scheme knowing that by their actions PNC will negate on its mortgage lending promises to the plaintiffs and would as a result violate the law and thereby proximately caused damages to the plaintiffs, Tao Eniola and Vanilda Eniola.

72. Plaintiffs states that the defendant employees participated and in concert to commit an unlawful acts or in the alternative in a lawful manner to commit an unlawful acts, and as a result of said acts, plaintiffs suffered injuries.

73. Defendant's employees in concert agreed to damage the plaintiffs by performing various acts through which the defendant acts contributed to the scheme all of which involved PNC to cause injuries to the plaintiffs.

74. The actions of the defendant, PNC were intentional, forethought and willful and as a result plaintiffs suffered injuries

**WHEREFORE**, plaintiffs, Tao Eniola and Vanilda Eniola prays this court award them compensatory and punitive damages against the defendant, PNC jointly and severally, plus costs and other relief this court deems appropriate.

### REQUEST FOR JURY TRIAL

Plaintiffs hereby request that this case be tried before a jury.

Respectfully submitted,

Tao Eniola, pro se
9404 Van Buren Street
Lanham, MD. 20706
(301) 577 - 7526

Vanilda Eniola
9404 Van Buren Street
Lanham, MD 20706
(301) 577 - 7526